## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BEGASHAW AYELE. PRO SE. | ) |
| | ) |
| | ) |
| plaintiff | ) |
| vs | ) |
| | ) CIVIL ACTION NO. 1- 04-12216RCL |
| Defendant | ) |
| | ) |
| ALLIED SECURITY COMPANY, INC. | ) |
| EDWARD RZEPPA, (INDIV. CAPACITY | ) |
| | ) |

# FIRST AMENDED COMPLAINT

THE PARTIES

1.      I, Begashaw Ayele, "Ayele" am an Ethiopian by national origin and a citizen

of the United States of America presently residing at 261 O'Callaghan Way #816, South

Boston. MA 02127.

2.    (a)   Co-Defendant in his individual Capacity is Edward Rzeppa, "Rzeppa" a polish

decent  who works as a Site Manager  for Allied Security Co. Inc.  at 8 Whittier Place in

Boston,  Massachusetts 02114.

(b)   Defendant Allied Security Co. Inc. (a security firm which took over my original

employer, (Security System Inc. ("SSI")) is located in the state of Pennsylvania with

a Massachusetts office  located at 1135 Tremont street, Boston,  MA 02218.

**PRIOR PROCEEDING:**

3.      On June 17, 2004 Plaintiff filed charge of employment discrimination with the Equal Employment Opportunity Commission "EEOC" and the commission had dismissed the complaint  on 6/23/2004. See Notice of Dismissal and Rights to sue Letter at **EXHIBIT - A**

4.      On June 18, 2004 plaintiff had (*delivered by **hand** as well as by **mail***) [a] letter of request to the EEOC to delay the progress of the case (or its decision) as I was about to leave for Ethiopia and would be outside the United States for 3-4 months period of time. see Plaintiff's Letter to the EEOC at **EXHIBIT – B.**

5.      Upon my return to the United States on 30 September 30,  2004, plaintiff found EEOC's decision in the mail together with the plaintiff's Rights To Sue Letter within 90 days. See, Ibid. at No. 3

6.  Plaintiff contacted the EEOC to inquire (1) *why* the complaint was dismissed without formal response from the employer and (2) the reason *why* the  plaintiff's  Rights to sue letter of June 23, 3004 was not included with the decision of the case. Admitting only the its failure to mail the "right to sue Letter" (not the former) as inadvertent mistake,  on October 5, 2004 the EEOC had mailed to the plaintiff that same copy of the Rights to sue Letter and informed me that the case will not be closed by statute of limitation as the date counts from the date *I received the letter*  and not from the originally issued date of June 23, 2004 .

7.      For the reason stated above, this straightforward and home-drown civil complaint

has been prepared per Federal Rule of Civil Procedure 8(a)(1-3).

8.      In filing this complaint jurisdiction is conferred with this court under Title 28 U.S.C. §1331, 28 U.S.C. §1332 and 28 U.S.C. §1343

9.      Venue for all cause of action stated here lies in the city of Boston, and the state of Massachusetts as the alleged misconduct of the employer has took place within the boundary of the city of Boston and the state of Massachusetts.

10.     The statutory base of this civil complaint is invoked under the Civil Rights Act of 1964, 42 U.S.C. 2000 et seq. or " Title VII" and/or 42 U.S.C. 1981 as amended, as well as the Family Leave Medical Act of 1993, 29 U.S.C. 2601 et seq.

## STATEMENT OF THE FACT

11.     I, Begashaw Ayele, originally was hired by Security System Incorporated ("SSI") on January 15, 2004 and after the takeover, I became employee of Allied Security Co. Inc. effective March 19, 2004.

12.     Throughout my brief employment with the former and the later companies, my Work site was at 8 Whittier Place, (a residential apartment complex with approximately 400 people) located in Boston, Massachusetts. The manager and the one who terminated plaintiff was Edward Rzeppa, a non-minority member of a Polish origin.

13.     In the course of my employment, for the first time, I was falsely accused by Mr. Rezppa that I have send a guest to a tenant's unit without the tenant's prior

3

knowledge (and/ or permission) by alleging that *"I have send the gust to one of the 22 floors so that the guest will find the whereabouts of the tenant's unit in his own effort".* However, all the employees of all shift (including myself) never permit any visitor to enter occupant's unit unless the tenant him/herself called security beforehand to inform us that his/her guest be permitted to enter his unit.

14.     The last incident (and the reason for my arbitrary termination of employment) occurred on April 16, 2004 approximately at 1640 GMT or 4:40EST when a woman by the name of Erika Collings, asked me to have a key whom she claimed that a tenant had left for her at the concierge desk. Unable to locate any key, I repeatedly asked Erika to tell me which tenant's unit she was about to visit so that I can call her client and inform her/his visitor's arrival. However, Ms. Collings called her client by a cell phone to elsewhere and requested me to talk to her client by the cellular phone that she made from. *As the company manual prohibits such practice,* I have decidedly declined to talk to her client but asked her to wait to let the assistant shift supervisor or "Rover" be called and assist her. The "Rover" called by the name Floyed Lewis (an African American) came to the seen and assisted her and left. However, as I was processing the delivery of tenant's packages (mail) and attempted to opening electronically the interior door for her, and as Mr. Lewis was in his way to the other building, Ms. Collings, in a raised voice, said " ….open the door .. nigger" /1** and rushed to the elevator door as if she

was not heard by me what she had said.

15.     Appropriate or not, I have responded to her by saying "I heard you bitch…./2**…don't say it again " and Mr. Lewis heard what I said but not her as she

4

was outside the interior door about to enter). Moreover, Mr. Lewis said to me "…calm, this is not a corporate environment and in residential setting everything is different …" and rushed to his other duty. I responded to him that "this is racism …. and as a black man you should have to feel it whether the environment is corporate or residential.. etc.

16.      One hour later, approximately at 5:00pm, Mr. Lewis returned to my desk and informed me to see Mr. Rzeppa, the Manager of Security at Whittier Place. Upon my arrival, I was asked as to the circumstances and briefly stated to him what was transpired. Mr. Rzeppa with his cursory eyes said to me *"people in this country has a right to say whatever they wanted and that is her opinion but you shouldn't respond in like manner"*. Soon after I asked him whether he share her "opinion", but rather than answering my question, he immediately handed me over a prepared hand written termination memo and said "this is my opinion" and asked me to sign the paper containing false and fabricated issues to justify his action. After putting few statement as to the falsity of the issue (and a threat to sue the company and Mr. Rzeppa himself in his individual capacity) I have returned the tie and the blazer of that work day. Moreover, as I was terminated from my employment I was accompanied by Mr. Rzeppa up to my work site and asked me to collect my belongings and return the remaining uniforms at later days. I informed that not only the uniforms but I also informed him that I will bring with me a <u>summons and complaint</u> for his reckless decision. Mr. Rzeppa said "let the company worry, … you can not see me anyway but the lawyer."

---

1/** <u>*Webster's New World Dictionary, of American English*</u> *(3rd Edition, page 916) defined the word **"Nigger"** as viciously hostile epithet, regarded virtually taboo because of the legacy of racial hatred by white against blacks.*

2/** *Similarly the word **"bitch"** was interpreted as "……a lewd or promiscuous women .. , a malicious.., bad tempered or aggressive women. Anything especially unpleasant or difficult… to behave spitefully or angrily towards someone. In view of the interpretation of these two words, plaintiff's action towards the gust (no matter how inappropriate) doesn't reflect any racial overtone similar to her.*

16.    On that evening, Friday, April 16, 2004, at approximately 9:00pm, I called Mr.

Lewis to inform Mr Rzeppa that I will bring a court paper and the uniform on Monday

afternoon and Mr. Lewis confirmed to me that he will tell my message to Mr. Rzeppa.

17.    The plaintiff's termination of employment (in addition to the above described

incidents) was followed after I informed my intention to request the FLMA leave of

absence to Ethiopia and, the decision to terminate beforehand was an act of

discrimination under the law.  Furthermore, the plaintiff's termination is also in violation

of the company's Rule as described by **the Security Officers Handbook** of Section " E -

Progressive Discipline "  (attached herewith as **EXHIBIT – C**)

## REMEDY REQUESTED

Plaintiff respectfully request a Jury Trial, Injunction, Full back pay, Front Pay, Pre-

judgement Interest, Punitive and Compensatory damages, Cost and other related

expenses, all in the amount deem proper by the court.

Respectfully Submitted,

Begashaw Ayele, Pro Se
P.O. Box 230548
Boston, MA 02123
(617) 474-9774

Date 12-20-2004

## SERTIFICATE OF SERVICE

I        I, Begashaw Ayele, plaintiff in the above referenced caption-case certify that,

in addition to **hand delivery** the copy of the foregoing document to the Human Resource

office and/or of Allied Security Company Inc. <u>and</u> Edward Rzeppa of the Site Manager

of 8 Whittier Place in Boston, MA I have send the copy of "COMPLAINT" to the

following:

**THE LOCAL OFFICE**

(1)        Allied Security Co. Inc.
             1135 Tremont Street
             Boston, MA 02120

Or

**CORPORATE OFFICE**
Allied Security Co. Inc.,
3606 Horizon Drive
Kings of Russia, PA 19406

(2)        Edward Rezppa
             (Individual. Capacity)
             Manager of Security
             8 Whittier Place
             Boston, MA 02114

Dated on this the _26th_ day of _December_ 200_4_ , at Boston,
Massachusetts.

Sincerely.

Begashaw Ayele

7

**EXHIBIT - A**

EEOC Form 161 (3/98)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Begashaw Ayele**
   **P.O. Box 230548**
   **Boston, MA 02123**

From: **Boston Area Office**
   **John F. Kennedy Fed Bldg**
   **Government Ctr, Room 475**
   **Boston, MA 02203**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 161-2004-00374 | **Susan M. Boscia,** **Investigator** | **(617) 565-3213** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
Robert L. Sanders,
Director

JUN 23 2004
_____
(Date Mailed)

Enclosure(s)

cc: **Chief Executive Officer**
   **Allied Security**
   **1135 Tremont Street**
   **Boston, MA 02120**

**EXHIBIT - B**

June 18, 2004

**BY HAND DELIVERY**
U.S Equal Employment Opportunity Commission
Boston Area Office, Government Center
J. F. Kennedy Federal Building
Fourth Floor, Room 475
Boston, Massachusetts 02203



RECEIVE
JUN 18 2004
E.E.O.C.
BOSTON AREA OFFICE

RE: Begashaw Ayele vs. Allied Security Co. Inc.
Charge No. 161-2004-00374

Dear Sir/Madam,

I, Begashaw Ayele, (the Charging Party) for the above referenced caption-case respectively request the commission to *delay* its investigation as I will not be able to submit any rebuttal due to my trip to Ethiopia on June 23, 2004. I expect my stay to be 3-4 month (depends on the circumstances there) and will inform the commission as soon as I returned from my trip.

In the event that the commission entered its decision while I was outside the United States, the charging party's "Right to sue within 90 days" in Federal or State courts should be delayed until after I informed the commission of my return from my trip. As I have not change my mailing address, all letter of correspondence to me, therefore, should be sent to my usual P. O. Box No of 230548, Boston, Massachusetts 02123.

Sincerely,

Begashaw Ayele

CC:  Allied Security Co. Inc.
     1135 Tremont Street
     Boston, MA. 02120

**EXHIBIT - C**



ALLIED SECURITY INC.

# SECURITY OFFICER HANDBOOK

HR-13SO

6

## E.    <u>Progressive Discipline</u>

Disciplinary action will be taken when Company policies, procedures and work rules are violated.  It is the policy of the Company to handle all employee performance deficiencies and misconduct in a consistent, timely and equitable manner, free from emotional overtones or personality differences.  Generally, this policy is to be effected by use of progressive discipline.  There are four basic elements in the progressive discipline process, as follows:

1.    **Oral Warning**
2.    **First Written Warning**
3.    **Final Written Warning**
4.    **Suspension Pending Termination**

These steps will be used in a progressive manner consistent with the severity of the policy violation and/or performance problem.  However, the Company reserves the right to skip any step, in whole or in part, and move immediately to any further step including suspension pending termination as it deems necessary. Consequently, no employee may rely on these guidelines as "promises" or "agreements" by the Company to impose the discipline contained in the guidelines in any situation or prior to termination.  Termination may occur without use of progressive discipline and without prior notice.

## F.    <u>Criminal Records</u>

Allied Security will not knowingly hire or retain employees who have been convicted of a felony or other specified offense as outlined in applicable state licensing laws. (The screening process and disqualifying offenses vary state by state.)  As part of the screening and interview process, applicants will assist the Company in completing a criminal history check.  A disqualifying offense found in a criminal record check will result in an applicant not being hired, or the termination of a current employee.  Failure of an employee to disclose in his/her application a criminal conviction will result in termination regardless of whether the conviction is a disqualifying offense under applicable law.

In the event that a current employee is arrested while employed, a Criminal Review Panel will be convened to review the circumstances of the arrest.  The Criminal Review Panel will meet with the employee to review the facts, hear the individual's version of the incident and then make a decision on the appropriate action to be taken, including possible termination.

UNITED STATES DISTRICT COURT

```
                                    )
BEGASHAW AYELE. PRO SE.             )
                                    )
            plaintiff               )
    vs                              )
                                    )      CIVIL ACTION
            Defendant               )      NO._____
                                    )
ALLIED SECURITY COMPANY, INC.       )
EDWARD RZEPPA, (INDIVIDUAL CAPACITY )
                                    )
```

## COMPLAINT

THE PARTIES

1.          I, Begashaw Ayele, "Ayele" am an Ethiopian by national origin and a citizen
of the United States of America presently residing at 261 O'Callaghan Way #816, South
Boston. MA 02127.

2.    (a)  Co-Defendant in his individual Capacity is Edward Rzeppa, "Rzeppa" who
works as a Site Supervisor for Allied Security Co. Inc. at 8 Whitter Place in Boston,
Massachusetts.

      (b)  Defendant Allied Security Co. Inc. (a security firm which took over my original
employer, (Security System Inc. ("SSI")) is located in the state of Pennsylvania with
a Massachusetts office located at 1135 Tremont street, Boston, MA 02123.

- 1 -

**PRIOR PROCEEDING:**

3.       On June 17, 2004 Plaintiff filed charge of employment discrimination with the Equal Employment Opportunity Commission "EEOC" and the commission had dismissed the complaint on 6/23/2004. See Notice of Dismissal and Rights to sue Letter at **EXHIBIT - A**

4.       On June 18, 2004 plaintiff had (*delivered by* **hand** *as well as by* **mail**) [a] letter of request to the EEOC to delay the progress of the case (or its decision) as I was about to leave for Ethiopia and would be out side the United States for 3-4 months period of time; see Plaintiff's Letter to the EEOC at **EXHIBIT – B.**

5.       Upon my return to the United States on 30 Sept. 2004, plaintiff found EEOC's decision in the mail together with the plaintiff's Rights To Sue Letter. Ibid. at No. 3

6.   Plaintiff contacted the EEOC to inquire why the complaint was dismissed without formal response from the employer and the reason why the plaintiff's Rights to sue letter of June 23, 3004 was not included with the decision of the case. Admitting as inadvertent mistake, on October 5, 2004 the EEOC had mailed to the plaintiff that same copy of the Rights to sue Letter and informed me that the case will not be closed by statute of limitation as the date counts from the date *I received the letter* and not from the originally issued date of June 23, 2004 .

7.       For the reason stated above, therefore, this straightforward home-drown civil complaint has been prepared  per Federal Rule of Civil Procedure 8(a)(1-3).

- 2 -

8.      In filing this complaint jurisdiction is conferred with this court under Title 28

U.S.C. §1331, 28 U.S.C. §1332 and 28 U.S.C. §1343

9.      Venue for all cause of action stated here lies in the city of Boston, and the state of

Massachusetts as the alleged misconduct of the employer has took place within the

boundary of the city of Boston and the state of Massachusetts.

## STATEMENT OF THE FACT

10.     I, Begashaw Ayele, originally was hired by Security System Incorporated ("SSI")

in January of 2004 and after the takeover, I became employee of Allied Security Co.

Inc. effective March 19, 2004.

11.     Throughout my brief employment with the former and the later companies, my

work site was at 8 Whittier Place, (a residential apartment complex with approximately

400 people) located in Boston, Massachusetts. The manager and the one who terminated

plaintiff was Edward Rzeppa, a non-minority member of a Polish origin.

12.     In the course of my employment, for the first time, I was falsely accused by Mr.

Rzeppa that I have send a gust to a tenant's unit without the tenant's prior knowledge

(and/ or permission) by alleging that *"I have send the gust to find the whereabouts of the*

*tenant's unit in his own effort"*. All the employees of all shift (including myself) never

permit any visitor to enter occupant's unit unless the tenant called security beforehand to

let her/his guest be permitted to enter his unit.

13.     The last incident (and the reason for my arbitrary termination of employment)

- 3 -

occurred on April 16, 2004 approximately at 1640 GMT or 4:40EST when a woman by the name Erika Collings, asked me to have a key whom she claimed that a tenant had left for her at the concierge desk. Unable to locate any key, I repeatedly asked Erika to tell me which tenant's unit she was about to visit so that I can call her client and inform her/his visitor's arrival. However, Ms. Collings called her client by cell phone elsewhere and requested me to talk to her client by the cellular phone that she made from. As such practice is prohibited by the company manual, I have decidedly declined to talk to her client but asked her to wait to let the assistant shift supervisor or "Rover" be called and assist her. The "Rover" called by the name Floyed Lewis (an African American) came to the seen and assisted her and left .As I was electronically opening the interior door for her, and as Mr. Lewis was in his way to the other building, in raised voice, she insulted me by saying " ….open the door .. nigger " and rushed to the elevator door as if she was not heard what she had said.

14.    Appropriate or not, I have responded to her "I heard you **beach**….. don't say it again " and Mr. Lewis heard what I said but not her as she was outside the interior door about to enter). Moreover, Mr. Lewis said "…calm, this is not a corporate environment and in residential setting everything is different …" and rushed to his other duty. I responded to him that "this is racism …. and as a black man you should have to feel it whether the environment is corporate or residential… " etc.

15.    One hour later, approximately at 5:00pm, Mr. Lewis returned to my desk and informed me to see Mr. Rzeppa, the Manager of Security at Whittier Place. Upon my

- 4 -

arrival, I was asked as to the circumstances and briefly stated to him what was transpired. Mr. Rzeppa with his cursory eyes said to me *"people in this country has a right to say whatever they wanted and that is her opinion but you shouldn't respond in like manner"*. Soon after I asked him whether he share her "opinion", but rather than answering my question, he immediately handed me over a previously prepared hand written document and said "this is my opinion" and asked *me to sign the paper containing  false and fabricated  issues.* After putting few statement as to the falsity of the issue (and a threat to sue the company and Mr. Rzeppa himself in his individual capacity) I have returned the tie and the blazer of that  work day. Moreover, as I was terminated from my employment I was accompanied by Mr. Rzeppa  up to my work site and asked  me to collect my belongings and return the remaining uniforms at later days.  I informed that not only the uniforms but I also informed him that I will bring  with me a <u>summons and complaint</u> for his reckless decision. Mr. Rezeppa said "let the company worry, ... you can not see me anyway but the lawyer."

16.    On that evening, Friday, April 16, 2004,  at approximately 9:00pm,  I called Mr. Lewis to inform Mr Rzeppa that I will bring a court paper and the uniform on Monday afternoon and Mr. Lewis confirmed to me that he will  tell my  message  to Mr. Rzeppa.

17.    The plaintiff's termination of employment (in addition to the above described incidents) was followed after I informed my intention to request  the company the FLMA leave of absence to Ethiopia and, the decision to terminate beforehand was an act of discrimination under the law.  Furthermore, the plaintiff's termination is also in violation

of the company's Rule as described by **the Security Officers Handbook** of Section " E - Progressive Discipline " (attached herewith as **EXHIBIT – C**)

## REMEDY REQUESTED

Plaintiff respectfully request a Jury Trial, Injection, Full back pay, Front Pay, Pre-judgement Interest, Punitive and Compensatory damages, Cost and other related expenses, all in the amount deem proper by the court.

Respectfully Submitted,

Begashaw Ayele, Pro Se
P/O. Box 230548
Boston, MA 02123
(617) 474-9774

Dated 10/18/04

- 6 -

## SERTIFICATE OF SERVICE

I       I, Begashaw Ayele, plaintiff in the above referenced caption-case certify that,

in addition to **hand delivery** the copy of the foregoing document to the Human Resource

office and/or of Allied Security Company Inc. and Edward Rzeppa of the Site Manager

of 8 Whittier Place in Boston, MA I have send the copy of "COMPLAINT" to the

following:


Allied Security Co. Inc.
1135 Tremont Street
Boston, MA 02120


Dated, delivered by hand and send by U.S certified mail   on this the _____ day of
_____ 200 ___, at Boston, Massachusetts.



Sincerely.


Begashaw Ayele

**EXHIBIT - A**

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Begashaw Ayele**
**P.O. Box 230548**
**Boston, MA 02123**

From: **Boston Area Office**
**John F. Kennedy Fed Bldg**
**Government Ctr, Room 475**
**Boston, MA 02203**

| | |
|---|---|
| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **161-2004-00374** | **Susan M. Boscia,** Investigator | **(617) 565-3213** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*[signature]*

**Robert L Sanders,**
**Director**

JUN 2 3 200

*(Date Mailed)*

Enclosure(s)

cc: **Chief Executive Officer**
**Allied Security**
**1135 Tremont Street**
**Boston, MA 02120**

**EXHIBIT - B**

June 18, 2004

**BY HAND DELIVERY**
U.S Equal Employment Opportunity Commission
Boston Area Office, Government Center
J. F. Kennedy Federal Building
Fourth Floor, Room 475
Boston, Massachusetts 02203



RE: <u>Begashaw Ayele vs. Allied Security Co. Inc.</u>
<u>Charge No. 161-2004-00374</u>

Dear Sir/Madam,

I, Begashaw Ayele, (the Charging Party) for the above referenced caption-case respectively request the commission to *delay* its investigation as I will not be able to submit any rebuttal due to my trip to Ethiopia on June 23, 2004. I expect my stay to be 3-4 month (depends on the circumstances there) and will inform the commission as soon as I returned from my trip.

In the event that the commission entered its decision while I was outside the United States, the charging party's "Right to sue within 90 days" in Federal or State courts should be delayed until after I informed the commission of my return from my trip. As I have not change my mailing address, all letter of correspondence to me, therefore, should be sent to my usual P. O. Box No of 230548, Boston, Massachusetts 02123.

Sincerely,

Begashaw Ayele

CC:  Allied Security Co. Inc.
     1135 Tremont Street
     Boston, MA. 02120

**EXHIBIT - C**



ALLIED SECURITY INC.

# SECURITY OFFICER HANDBOOK

HR-13SO

## E.    Progressive Discipline

Disciplinary action will be taken when Company policies, procedures and work rules are violated.  It is the policy of the Company to handle all employee performance deficiencies and misconduct in a consistent, timely and equitable manner, free from emotional overtones or personality differences.  Generally, this policy is to be effected by use of progressive discipline.  There are four basic elements in the progressive discipline process, as follows:

1.    **Oral Warning**
2.    **First Written Warning**
3.    **Final Written Warning**
4.    **Suspension Pending Termination**

These steps will be used in a progressive manner consistent with the severity of the policy violation and/or performance problem.  However, the Company reserves the right to skip any step, in whole or in part, and move immediately to any further step including suspension pending termination as it deems necessary.  Consequently, no employee may rely on these guidelines as "promises" or "agreements" by the Company to impose the discipline contained in the guidelines in any situation or prior to termination.  Termination may occur without use of progressive discipline and without prior notice.

## F.    Criminal Records

Allied Security will not knowingly hire or retain employees who have been convicted of a felony or other specified offense as outlined in applicable state licensing laws.  (The screening process and disqualifying offenses vary state by state.)  As part of the screening and interview process, applicants will assist the Company in completing a criminal history check.  A disqualifying offense found in a criminal record check will result in an applicant not being hired, or the termination of a current employee.  Failure of an employee to disclose in his/her application a criminal conviction will result in termination regardless of whether the conviction is a disqualifying offense under applicable law.

In the event that a current employee is arrested while employed, a Criminal Review Panel will be convened to review the circumstances of the arrest.  The Criminal Review Panel will meet with the employee to review the facts, hear the individual's version of the incident and then make a decision on the appropriate action to be taken, including possible termination.