**EXHIBIT – E**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| BEGASHAW AYELE, <u>PRO SE</u> | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| ALLIED SECURITY LLC.,  ET  AL. | ) |
| | ) |
| Defendant | ) |

**CIV. ACTION NO. 04- 12216RCL**

**BY HAND DELIVERY**

TO:

Richard W. Paterniti
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116

April 10, 2005

RE:   DISCLUSOURES OF DOCUMENTS UNDER RULE
<u>26 OF THE FEDERAL RULE OF CIVIL PROCEDURE</u>

Dear Mr. Paterniti,

    I am writing this letter in reference to our earlier telephone conversation and your recent letter to me dated April 8, 2005 concerning discovery issues under FRCP. 26.   In your correspondence to me titled "INITIAL DISCLOSURES OF DEFENDANTS", dated February 22, 2005, you stated that the "<u>Document likely to be relevant in this action include ***Plaintiff's Personnel File*** and documents concerning Allied's Personnel Policies</u>". You promised to produce all documents you identified and further asserted that  …."defendant reserve the right to supplement this list as necessary". As of this day, however, you have not disclosed all identified documents particularly plaintiff's *complete* Personnel File either from the previous company (Security System Inc., "SSI") or Allied Security LLC. but partial copy of a training memo ……etc.. from Security Systems Inc. which has no any relationship to the plaintiff's case as my employment with SSI was ended prior to Allied Security's takeover on March  19, 2003.

Please be informed that Rule 26 of the Federal Rule of Civil Procedure require a party in a civil case to produce such documents **"without waiting a discovery request...."** and, therefore, you have no legal justification to hold such personnel file for two months. As you have indicated in your notice of deposition to me, the date of the deposition is for <u>April 28, 2005</u> and, therefore I should receive the complete copy of my personnel record (including payroll & time shift or attendance record) all of which are covered under Rule 26.

Last week when we discussed this matter, you informed me that you will be on vacation for few days and by considering that time, I have given you to produce all requested documents from SSI and Allied until **April 21, 2005** so that I will retain all of the documents that I am entitled to. If I did not receive such documents by the close of the business hours of April 21, 2005, however, I have no other choice but to file **Motion for Compelling Discovery** and, in the alternate, **Motion in Limine** to exclude such documents from introduction as evidence as I have no legal obligation to testify on the documents that I have not chance to review. The plaintiff's deposition of April 28, 2005, likewise will be affected as plaintiff can not testify without difficulty in the absence of reviewing my personnel record prior to the deposition date.

In the copy of documents produced recently by defendants under Rule 26 Initial Disclosures, plaintiff had noted document falsification and/or fabrications to reinforce the defense of the case. To assert the authenticity of documents, plaintiff formally ask defendant's counsel to present the **original** of all documents falsified and/or modified by Edward Rzeppa at the time and place of plaintiff's deposition.

The original copy of this letter of correspondence has been filed with the court to remind defendants that, in the absence of proper response to the request, the motion for compelling discovery will be filed by plaintiff effectively after the notice of this letter ended on April 21, 2005.

Sincerely,

Begashaw Ayele    4 / 11 / 2005

Begashaw Ayele

**EXHIBIT – F**



Representing Management Exclusively in Workplace Law and Related Litigation

| | | | |
|---|---|---|---|
| Jackson Lewis LLP | ATLANTA, GA | LOS ANGELES, CA | SACRAMENTO, CA |
| 75 Park Plaza | BOSTON, MA | MIAMI, FL | SAN FRANCISCO, CA |
| Boston, Massachusetts 02116 | CHICAGO, IL | MINNEAPOLIS, MN | SEATTLE, WA |
| Tel 617-367-0025 | DALLAS, TX | MORRISTOWN, NJ | STAMFORD, CT |
| Fax 617-367-2155 | GREENVILLE, SC | NEW YORK, NY | WASHINGTON, DC REGION |
| www.jacksonlewis.com | HARTFORD, CT | ORLANDO, FL | WHITE PLAINS, NY |
| | LONG ISLAND, NY | PITTSBURGH, PA | |

April 8, 2005

**VIA OVERNIGHT MAIL**

Begashaw Ayele
261 O'Callaghan Way, Apt. #816
South Boston, MA 02127

RE:   Ayele v. Allied Security Company, Inc. and Edward Rzeppa
<u>United States District Court Civil Action No. 04-12216-RCL</u>

Dear Mr. Ayele:

Pursuant to our agreement, I now enclose personnel records related to your employment with Allied Security (Bates No. DEF00001-11). We are producing these documents at your request, but reiterate that Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure does not require Defendant to produce these documents at this time.

With respect to our agreement regarding mediation, we propose Magistrate Judge Marianne Bowler as a mediator for this case. As you and I discussed, we will utilize the Court's ADR Program through which we would select Magistrate Judge Bowler. As I explained to you, the clerk for Judge Lindsay informed me that we may send a letter to Judge Lindsay indicating our agreement to mediate the case and to mediate with Magistrate Judge Bowler. Upon receipt of this letter, the Court will arrange for the mediation. Would you kindly notify me upon receipt of this letter as to whether you will agree to Magistrate Judge Bowler as the mediator for this matter.

Very truly yours,

JACKSON LEWIS LLP

Richard W. Paterniti

RWP/ks
Enclosures
cc:   Jeffrey S. Brody

# Security Systems, Inc. @ Whittier Place
## OFFICER TRAINING CHECKLIST

( Security Officer's Name )

| The Officer And The Training Supervisor Will Initial Each Item As They Are Covered | | | | |
|---|---|---|---|---|
| Officer Initials | Date | Policy/Procedure | Date | Supervisor Initials |
|  | 1/29 | Introduction / Property Information | 1/29 |  |
|  | '' | Access Control |  |  |
|  | '' | Greeting Residents |  |  |
|  | '' | Greeting Guests/Visitors |  |  |
|  | '' | Deliveries to Unit |  |  |
|  | '' | Guest Authorization Form |  |  |
|  | '' | Contractor Authorization Form |  |  |
|  | '' | Key Sign Out / In Procedure |  |  |
|  | '' | Package Procedures (In and Out) |  |  |
|  | '' | Package Inventory |  |  |
|  | '' | Concierge / Shift Report |  |  |
|  | '' | Incident Reports |  |  |
|  | '' | Phone Etiquette |  |  |
|  | '' | Taxi Numbers & Procedure |  |  |
|  | '' | Luggage Carts |  |  |
|  | '' | Two-Way Radios |  |  |
|  | '' | CCTV System |  |  |
|  | '' | Intercom System |  |  |
|  | '' | Remote Door Buttons |  |  |
|  | '' | Medical Emergencies |  |  |
|  | '' | Elevator Problems / Emergencies |  |  |
|  | '' | Elevator Entapment |  |  |
|  | '' | Maintenance Requests / Emergencies |  |  |
|  | '' | Emergency Contact / On Call Numbers |  |  |

DEF000001

| Officer Initials | Date | Policy/Procedure | Date | Supervisor Initials |
|---|---|---|---|---|
| | 1/29/04 | Noise Complaints | 429 | EP |
| | " | Lock Outs | | EP |
| | " | Open House Policy | | EP |
| | " | Reserved Parking | | EP |
| | " | Visitor / Public Parking | | EP |
| | " | Handicapped Parking | | EP |
| | " | Vehicle Towing | | EP |
| | " | Elevator / Delivery Schedule | | EP |
| | " | Move Procedure (In & Out) | | EP |
| | " | Loading Dock Procedure | | EP |

**I have been trained on all items listed above and I have no questions at this time.**

**If I have any questions during my shift, I will contact the Shift Supervisor or the Site Manager for assistance.**

**I will positively identify all persons seeking admittance, announcing all visitors and deliveries.**

**If a person I do not recognize claims to be a resident, I will verify their claim by referencing the Tenant Roster.**

_____   4/29/04
( Security Officer's Signature )    ( Date )

_____   1/29/04
( Training Supervisor's Signature )    ( Date )

**SECURITY** EMPLOYEE CHANGE OF STATUS

CHECK THE APPROPRIATE BOXES AND COMPLETE SECTION (S) INDICATED. ONCE COMPLETED FORWARD TO DISTRICT OR REGIONAL HUMAN RESOURCES DEPARTMENT.

Emp #: 145807   Last Name: Ayele   First Name: Begashaw

| Section 1 Always Complete | ☑ Changing an Existing Employee | ☐ New Hire Employee (Support/Non-Ex only) |
|---|---|---|
| | ☐ New employee (Sections 1,2,3,8) | ☐ Leave of Absence (sections 1, 4,8) |
| | ☐ Salary/Rate Change (Sections 1,3,8) | ☑ Separation (Sections 1,5,6,8) |
| | ☐ Transfer (Sections 1,3, 8) | ☐ Other (Use Comments & Sections 1,6,8) |
| | ☐ Position/Title (sections 1, 3,8) | ☐ Rehire (Sections 1,2,3,8) |

**2 Employee Information**

Address:
City:   State:   Zip Code:
Soc. Sec. #:   Home Phone:   District Office:

**3 Payroll Information**

| Current Employee Information | New Hire/ Change Information |
|---|---|
| Pay Type: ☐ S/O  ☐ Support Non-Ex  ☐ Salaried | ☐ S/O  ☐ Support/ Non-Ex  ☐ Salaried |
| | Full time date ( if appropriate) |
| Effective Date of current information: | Effective Date of Change: |
| Job Number: | Job Number: |
| Position:        F/T- P/T (circle one) | Position:        F/T – P/T (circle one) |
| Annual/ or Hrly rate:  $ | Annual or Hrly rate:  $ |
| Other Compensation: $ | Other Compensation:  $           $ |
| Percent Increase / Decrease:         % | Percent Increase / Decrease:         % |
| Salary Grade: | Salary Grade: |

**4 Leaves**

| TYPE OF LEAVE | TYPE | DISABILITY | DURATION: |
|---|---|---|---|
| 30 DAY ☐  MILITARY ☐ | PAID ☐ | Short Term ☐ | BEGINNING: |
| FMLA ☐ | UNPAID ☐ | Long Term ☐ | ENDING: |

NOTE: PROPER DOCUMENTATION MUST BE SUBMITTED WITH THIS FORM, INCLUDING A LETTER FROM THE EMPLOYEE STATING HIS OR HER INTENT TO RETURN TO WORK AND HIS DOCTOR'S CERTIFICATION

**5 Separations**

| ☐ RESIGNATION* (state reason in General Comments) | ☐ LAY OFF (State reason in General Comments) |
|---|---|
| ☑ DISCHARGE* (state reason in General Comments) | ☐ OTHER (Explain in General Comments) |

LAST DAY WORKED: 4/16/04   EFF. TERM. DATE: 4/16/04
* FOR DISCHARGE / RESIGNATION : ATTACH DOCUMENTATION

**6 General Comments**

Officer discharged for addressing client in a profane and verbally abusive manner

**7 Vacation / Severance**

Eligible Vacation Hours:   Separation Agreement:

**8 Approvals**

SUPERVISOR / ACCOUNT MGR  Edward D 3000   DATE: 4/19/04
HR / District Office Approval                DATE:

EMPLOYEE CHANGE OF STATUS.doc   White: HR   Yellow: Manager   REVISED:4/19/04   HR Form: HR16



**Disciplinary/Counseling Statement**
Date 4/16/04

Employee Name Begashaw Ayele          Employee # 145807
District Office Boston    Department/Site: 85020    Position: Concierge

**Type of Action:**

| | |
|---|---|
| ☐ Verbal Warning | ☑ Final Written | ☑ Termination |
| ☐ First Written | ☐ Final Written with Suspension | (dates) |

Nature of Infraction: Verbal Abuse & use of profanity towards client

Describe Incident (Required) ( Please give complete explanation of infraction above)
Shift Supervisor observed Officer Ayele address a female guest of a resident as a "Bitch". Officer confided in supervisor that he had contemplated "hitting" her.

Acceptable standards: A

Plan of Action: ( Coaching /Training/ other Assistance) Terminated

**Follow-up:**
☑ No follow-up necessary
☐ A follow-up meeting will be held_____ ( be specific)

Employee Remarks: Please check one of the boxes below and add any comments (If additional space is required, use reverse or attach a separate sheet).
☐ I agree with the statements above.    ☒ I disagree with the statement above
Allegation is false in Character and Content and Substance. The Employee Will file Charge with EEOC

I have read and understand the nature of this warning and understand that any future violation of any company or failure to perform my job duties will result in further disciplinary action up to and including termination. I also understand that if I disagree with the above I may submit a written statement, within five (5) days, to my file and/or request a review by a Regional Human Resources Representative.

Employee Signature refused signature          Date:_____
Witness Signature_____          Date:_____
Supervisor Signature Edward Boop          Date: 4/16/04
Account Manager Signature_____          Date: 4/16/04
Human Resources Representative_____          Date:_____

## WHITTIER PLACE SECURITY
Security Systems Inc.
Incident Report

Resident Name: Erika Colligan    Incident Date: 4-16-04    Time: 1640

6 (8) Whittier Place    Unit #/Floor: 24B    Area: Front Lobby

Incident or Request type:

Other units / residents involved: None

Does resident give permission for maintenance to enter unit if they are not home?

YES  /  NO

**Details of service requested or description of incident(below):**

S/o Aleye ask S/o Lewis to come to the S/w Desk. When S/o Lewis got there ms colligan said that S/o Aleye would not give her the key she needed and that he was very rude to her. S/o Aleye told S/o Lewis that she did not say what unit she needed the key for our cwho Left it for her. S/o Lewis Locked in the Authorization Book and ms colligans name was there. The Keys were logged and given to ms. colligan for 24B S/w.

**Follow up action taken: (rover, porter, maintenance, etc.)**

Officer Completing Report: Floyd R Lewis    Date:

Signature of Officer: _____    (Continue on back if nec.)

DEF000005

**WHITTIER PLACE SECURITY**
Security Systems Inc.
Incident Report

**Additional information continued from front page.**

As S/O Lewis was walking away from the desk S/O Aleye would not open the door S/O Lewis told him to open the door. As the door was open S/O Aleye said "Bitch" and Ms. Colligan and S/O Lewis heard him. S/O Lewis told S/O Aleye that he was wrong to use that type of language on a guest and that he will be reported to Ed Reema Site Manager.

After Ms. Colligan left S/O Lewis paged Mr. Reema. S/O Lewis went back to the subject to make sure that S/O Aleye calmed down. S/O stated to S/O Lewis that it was maybe a good thing that I was there because he may have hit her. S/O Lewis then told S/O Aleye that he is to say anything at all to Ms. Colligan again. Just do your job without an attitude.

DEF000006

# SECURITY SYSTEMS, INC
# EMPLOYEE WARNING

Employee Name      **Begashaw Ayele**      Date    **2-Mar-04**

Time    <u>16:24</u>     Location      Eight Whittier Concierge Desk

Officer Filing Complaint:      Lt. Edward J Rzeppa

**Brief Statement of Complaint:**      Dereliction of Duty / Failure to Follow Established Procedure

**Documentation of a Verbal Warning**

**Details of Complaint:** Mr. Sam Abate of 8W/21E complained that on the afternoon of Tuesday 3/2/04 an unannounced visitor arrived at his unit's door. Mr. Abate stated that he was not expecting any guests and when he questioned his visitor, the visitor stated that he had stopped at the Concierge Desk and had informed the Officer on duty that he wanted to visit Sam but was unsure whether he resided on the 20th or 21st floor. The visitor further informed Mr. Abate that the Concierge eventually just let him into the building to find the unit on his own. Mr. Abate described the visitor as male, roughly 50 years of age wearing glasses and a Umass sweatshirt.

Lt. Rzeppa informed S/O Ayele of the complaint and questioned him about the incident upon his arrival for duty at approximately 1445 on 3/3/04. S/O Ayele stated that he had no specific recollection of the incident and furthermore that he would not do so, as it was contrary to procedure.

Lt. Rzeppa subsequently reviewed the CCTV data for the date and time concerned and observed a male matching the description provided by Mr. Abate enter and approach the Concierge Desk at approximately 16:23:59. The CCTV data shows the male and S/O Ayele engaged in dialogue until approximately 16:25:43 when the male is allowed to enter the building. The CCTV data does not show S/O Ayele making a phone call prior to the male's entry.

**Employee Remarks:** The incident described above is NOT completely True as I have not permitted the person to go into the building to find the Specific Unit number on his own effort. However, I have a brief conversation as to what he sought but never intentionally send the person to the unit. Contrary to Standard procedure. if this matter is becoming undo hardship for the inadvertent mistake, I must regret for its happening and would work in a better way as possibly as I can

**Actions and Recommendations:** Lt. Rzeppa has thoroughly reviewed the site's entry policy and procedures with S/O Ayele. He has been made to understand the seriousness with which this matter is regarded. S/O understands that a further violation of this policy will result in a Written Warning and a suspension without pay for no less than (2) days.

I agree that my signature on this document is not an admission of guilt but does attest to the fact that I have read, understood and received a copy of the above warning.

Employee Signature: *Begashaw Ayele*    date: 3 - 4 - 04

Supervisor Signature: *Lt Edward J Rzeppa*    date: 3-4-04

DEF000007

**Security Systems Inc.**
**@**
**Whittier Place**

# Memo

**To:**   Mr. Brian K Raboin

**From:**   Lt. Edward J Rzeppa – Security Manager

**CC:**

**Date:**   16 March 2004

**Re:**   <u>Officer Begashaw Ayele</u>

Per our phone conversation yesterday and based upon building management's wishes, we should find another home for Officer Ayele as soon as possible. I do not believe that he is a poor employee, however now that he has worked here for approximately two months, it is obvious that he is not well suited for the often-fast paced, multi-tasked environment that characterizes the property's Concierge Desks. He does not possess the customer relations skill set requisite for success in a residentially oriented security setting. I am not sure whether the root of the problem may be cultural or just a lack of sensitivity but the perception exists amongst the residents of Eight Whittier Place that his manner is inattentive bordering on rude

As you may recall, during his first few weeks at Whittier Place residents complained that he was "slow" in the discharge of his duties and that he was "not a good fit". At that time, I expressed the view that he was still attempting to learn the many and varied demands of the position and that he was exercising extreme caution lest he make a mistake. I also cited the fact that some Whittier residents can be, to put it mildly, overly demanding and somewhat unforgiving. We agreed, as did building management, that we should give him time to "grow into the position".

I believe that sufficient time has passed to warrant the determination that Officer Ayele will not be able to adapt to the demands of the job, such as they are at Whittier Place. We should, in response to building management's request, replace him with a candidate that is more suited to the environment at Whittier Place.

DEF000008

# Whittier Place Security Report

**Page: 1**

| | |
|---|---|
| **File #: 85020** | **Whittier Place Security #: 0000001211 0000** |

Category:        56 - Incident
Subcategory:     35 - Involving Security Staff Member
Type:            03 - Verbal Abuse of Guest

Occurrence Date: 4/16/04
Occurrence Time: 16:40
Reported Date:   4/19/04 Time: 09:00

Building/Site:   8 Whittier Place
                 Boston, Massachusetts 02114

Location:        Main Lobby  / Concierge Desk

Report Taken By: Lewis, Floyd
Resp. Supervisor: Rzeppa, Edward J

**User Defined Fields:**
CC:   RMcGinnity

## Whittier Place Security Narrative

Shift Supervisor Floyd Lewis reported that on 4/16/04 he was summoned to the Eight Whittier Concierge Desk at approximately 1640 by Officer Begashaw Ayele. Upon his arrival he was met by a Ms. Erika Colligan, an authorized guest of resident John Jarboe of 8W/24B. Ms. Colligan stated that Officer Ayele had treated her in an extremely rude manner and refused to issue the unit's keys to her.

Shift Supervisor Lewis questioned Officer Ayele about the incident and he stated that Ms. Colligan had refused to identify either the unit number that she needed access to or the name of its resident. Ms. Colligan refuted Officer Ayele's assertion by immediately stating that she had requested the keys to Unit 24B.

Shift Supervisor Lewis referenced the Guest Authorization to verify that Ms. Colligan had authorization to sign out the unit's keys. Upon confirmation of her authorization to enter, Shift Supervisor Lewis obtained Ms. Colligan's signature in the Key Log Book and then issued the unit's keys to her. Shift Supervisor Lewis then reported that Ms. Colligan approached the interior sliding glass door but that Officer Ayele refused to open it so that she could enter. Shift Supervisor Lewis reported having to issue Officer Ayele a direct order before he would allow Ms. Colligan to enter. As the door opened Shift Supervisor Lewis observed and reported that Officer Ayele, without provocation, directly addressed Ms. Colligan in a profane and abusive manner calling her a "bitch".

Once Ms. Colligan had passed, Shift Supervisor Lewis reprimanded Officer Ayele and instructed

**DEF000009**

# Whittier Place Security Report

**Page: 2**

him not to have any further conversation with Ms. Colligan. Shift Supervisor Lewis left the Eight Whittier Concierge Desk and paged Account Manager Edward Rzeppa to inform him of the situation. Shift Supervisor Lewis then reported returning to the Concierge Desk to ensure that Officer Ayele was in the proper frame of mind to discharge his duties. Upon his return, Supervisor Lewis reported that Officer Ayele confided in him, stating that it was a good thing that he (Supervisor Lewis) had arrived at the time he did because he (Officer Ayele) may have may have "hit her", referring to Ms. Colligan.

Account Manager Edward Rzeppa, after having been informed about the incident by Supervisor Lewis, reported back to the property, arriving at approximately 1845. Mr. Rzeppa discussed the matter in detail with Supervisor Lewis then placed a call to the residence of Mr. Jarboe. Mr. Jarboe answered the telephone prompting Mr. Rzeppa to identify himself and request permission to speak with Ms. Colligan about what had transpired. Ms. Colligan took the phone and Mr. Rzeppa asked her to please explain what had happened. She stated that she arrived at the Concierge Desk at approximately 1630 and requested the keys for Unit 24B. She stated that for some reason the Concierge was either unclear as to the nature of her request or was unwilling to assist her. She stated that his manner was rude and hostile. Ms. Colligan then stated that she asked Officer Ayele why he was treating her like a criminal and he became extremely agitated and shouted "I am not a criminal. Why are you calling me a criminal?" Mr. Rzeppa asked her if there might have been some confusion as to the nature of her request. Ms. Colligan replied that she is a long-term, frequent visitor of Mr. Jarboe's and that she was perfectly clear in requesting the keys to unit 24B occupied by Mr. John Jarboe. She reiterated that the Concierge appeared to have little interest in assisting her and did not even make an attempt to locate the unit's keys. When, after approximately ten minutes of waiting, it became clear to her that she was not going to obtain the keys to Mr. Jarboe's unit, she requested that the Concierge call his supervisor for assistance. Ms. Colligan stated that upon the supervisor's arrival she signed for and was issued the keys to the unit. She then related that the Concierge would not open the lobby's door for her even after he had observed his supervisor issue the unit's keys to her. She stated that the supervisor directed him to open the door and it was at this point that he addressed her as a "bitch". Mr. Rzeppa apologized for Officer Ayele's actions and asked her if she had said anything to him prior to his addressing her profanely. She replied in the negative stating that at the time she just wanted to get away from him and go upstairs. Mr. Rzeppa asked her if she was okay and she replied that at the time of the confrontation she was somewhat frightened by the Concierge's demeanor but that she was fine now. Mr. Rzeppa again apologized to her and informed her that he would not be present at the desk for the remainder of her visit, due to end on Monday the 19th. Ms. Colligan thanked Mr. Rzeppa for his concern and stated that she, up until today, had always been treated with respect and courtesy by the people working at the desk.

Mr. Rzeppa directed Supervisor Lewis to report to the Eight Whittier Concierge Desk, relieve Officer Ayele and have him report to the Security Office. Upon Officer Ayele's arrival to the Security Office, Mr. Rzeppa asked him to relate the details of what had happened between he and Ms. Colligan. Officer Ayele became visibly agitated and stated that she refused to identify

# Whittier Place Security Report

**Page: 3**

the unit number or the resident's name that she was intending to visit. Mr. Rzeppa asked Officer Ayele how he thought that this was possible, given the fact that she has visited many times in the past and had no problem remembering where she was going or who she was visiting. Officer Ayele replied that he had no idea. Mr. Rzeppa then asked Officer Ayele why he had made her wait so long before she requested that he contact his supervisor, indicating that the entire situation may have been resolved without incident had he taken the initiative to make the call himself. Officer Ayele offered no reply. When asked why he did not open the door for her after Supervisor Lewis had approved her entry he replied that "she was a bitch". Mr. Rzeppa asked Officer Ayele if he had addressed her as such and without hesitation he replied that he had and would do so again given the opportunity. He then stated that she had referred to him as a "nigger". Mr. Rzeppa asked Officer Ayele if he had made a statement to Supervisor Lewis to the effect that he may have hit her if he had not been present. Officer Ayele stated that he had not and that Supervisor Lewis was lying. Mr. Rzeppa informed Officer Ayele that even if she had referred to him in a derogatory manner he had no right to be verbally abusive towards her. At no time did Officer Ayele express concern about the incident or remorse for his actions.

Mr. Rzeppa then asked Officer Ayele to review a Disciplinary / Counseling Statement that had been prepared outlining the incident. Officer Ayele read it and stated that its contents were false. He added his comments and informed Mr. Rzeppa verbally that he was going to bring a law suit charging that he had been treated in a discriminatory manner. Twice, Mr. Rzeppa asked Officer Ayele to affix his signature to the form but he refused. Mr. Rzeppa informed Officer Ayele that he was being terminated for verbal abuse of a client and that he was not permitted on Whittier Place property without first making prior arrangements with him. Mr. Rzeppa requested that Officer Ayele leave his uniform jacket and tie in the Security Office. Mr. Rzeppa then escorted Officer Ayele back to his post where he was allowed to retrieve his personal belongings. Mr. Rzeppa then escorted Officer Ayele off of the property.

At no time during the meeting did Officer Ayele express any remorse over the incident.

**EXHIBIT - G**

Representing Management Exclusively in Workplace Law and Related Litigation

# jackson | lewis
Attorneys at Law

| ATLANTA, GA | LOS ANGELES, CA | SACRAMENTO, CA |
| BOSTON, MA | MIAMI, FL | SAN FRANCISCO, CA |
| CHICAGO, IL | MINNEAPOLIS, MN | SEATTLE, WA |
| DALLAS, TX | MORRISTOWN, NJ | STAMFORD, CT |
| GREENVILLE, SC | NEW YORK, NY | WASHINGTON, DC REGION |
| HARTFORD, CT | ORLANDO, FL | WHITE PLAINS, NY |
| LONG ISLAND, NY | PITTSBURGH, PA | |

April 21, 2005

Begashaw Ayele
261 O'Callaghan Way, Apt. #816
South Boston, MA  02127

> RE:  *Ayele v. Allied Security Company, Inc. and Edward Rzeppa*
> *United States District Court Civil Action No. 04-12216-RCL*

Dear Mr. Ayele:

Enclosed please find time and payroll records for your employment at Allied Security Co. (Bates stamped DEF000012 to DEF000014).  In response to your letter of April 10, 2005 filed with the Court and as I explained to you in our telephone conversation from yesterday, please note that Allied Security is unable to locate a personnel file for you from SSI, Inc.  As a result, the documents that were previously produced to you and those that are enclosed are copies of personnel records that Allied Security has located relating to your employment with the company.  If we locate any additional documents, we will forward them to you.

In addition, as you know, the Federal Rules of Civil Procedure and Local Rules provide that the parties should only file motions and documents submitted pursuant to an Order with the Court.  The filing of your April 10, 2005 correspondence with the Court is inconsistent with these rules and is prejudicial to Defendants.  Therefore, we request that you voluntarily withdraw the document from the Court's docket.

Very truly yours,

JACKSON LEWIS LLP

Richard W. Paterniti

RWP/ks
Enclosures
cc:     Jeffrey S. Brody

# AlliedBarton Security Services

| | Timekeeping Report |
|---|---|
| | **Hours by Employee** |

Date Range: 01/01/03 To 04/14/05

04/15/05     11:29:08 AM                          Page 1 of 1
**Maximum Security Level 9**

| Emp # | Employee Name | | | | | | | Job # | |
|---|---|---|---|---|---|---|---|---|---|
| Date | Daily Total | Hours | In | Out | Lunch | Pay Rate | Hours Type | | |
| 145807 | **Ayele, Begashaw** | | | **Total Hours:** | | | 156.50 | | |
| 03/22/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 03/23/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 03/24/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 03/25/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 03/26/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 03/29/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 03/30/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 03/31/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/01/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/02/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/03/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/05/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/06/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/08/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/09/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/12/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/13/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/14/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/15/04 | 8.00 | 8.00 | 15:00 | 23:00 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |
| 04/16/04 | 4.50 | 4.50 | 15:00 | 19:30 | 0.00 | $10.75 | Hourly-Regular | 85020 | Barkan Management - Whittie |

**Total Hours:**     156.50

**Total Employees:**          1

| Recap by Hours Type | | | |
|---|---|---|---|
| Hours Type | OT Eligible | OT Non Eligible | Total Hours |
| Hourly-Regular | 156.50 | | 156.50 |
| **Totals** | **156.50** | | **156.50** |

DEF000012

# AlliedBarton Security Services

Employee #'s Listed: 145807 To 145807
Group By: Employee

## Payroll Check History

Check Dates: All Dates

04/15/05   12:14:27 PM
Page 1 of 2
Maximum Pay Security Level 9
Batch Type
Security Level: 1

| Emp # | Employee Name | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Check Date | Check # | Check Amount | Check Status | 401 K Earnings | Check Frequency | Batch # | |
| **145807** | **Ayele, Begashaw** | | | | | | |

### 04/02/04    2903597    295.29    Normal    Bi-Weekly 2    3616    Automatic Checks

**Detail:**

**-----Hours-----**

| Wk End | Type | Rate | OT Rate | Reg | OT | DT | Exempt |
|---|---|---|---|---|---|---|---|
| 03/25/04 | Regular | 10.75 | | 32.00 | | | |
| | Total | | | 32.00 | | | |

**-----Earnings-----**

| Type | Taxable | Non Tax |
|---|---|---|
| Hours/Salary Paid | 344.00 | |
| Total | 344.00 | |

**-----Deductions-----**

**-----Taxes-----**

| | |
|---|---|
| Federal | 12.28 |
| FICA | 21.33 |
| Medicare | 4.99 |
| MA | 10.11 |
| Total | 48.71 |

### 04/16/04    2928046    676.57    Normal    Bi-Weekly 2    3657    Automatic Checks

**Detail:**

**-----Hours-----**

| Wk End | Type | Rate | OT Rate | Reg | OT | DT | Exempt |
|---|---|---|---|---|---|---|---|
| 04/01/04 | Regular | 10.75 | | 40.00 | | | |
| 04/08/04 | Regular | 10.75 | | 40.00 | | | |
| | Total | | | 80.00 | | | |

**-----Earnings-----**

| Type | Taxable | Non Tax |
|---|---|---|
| Hours/Salary Paid | 860.00 | |
| Total | 860.00 | |

**-----Deductions-----**

**-----Taxes-----**

| | |
|---|---|
| Federal | 82.27 |
| FICA | 53.32 |
| Medicare | 12.47 |
| MA | 35.37 |
| Total | 183.43 |

### 04/30/04    2952678    399.37    Normal    Bi-Weekly 2    3705    Automatic Checks

**Detail:**

**-----Hours-----**

| Wk End | Type | Rate | OT Rate | Reg | OT | DT | Exempt |
|---|---|---|---|---|---|---|---|
| 04/15/04 | Regular | 10.75 | | 40.00 | | | |
| 04/22/04 | Regular | 10.75 | | 4.50 | | | |
| | Total | | | 44.50 | | | |

**-----Earnings-----**

| Type | Taxable | Non Tax |
|---|---|---|
| Hours/Salary Paid | 478.38 | |
| Total | 478.38 | |

**-----Deductions-----**

**-----Taxes-----**

| | |
|---|---|
| Federal | 25.72 |
| FICA | 29.66 |
| Medicare | 6.94 |
| MA | 16.69 |
| Total | 79.01 |

### Totals: (3 Checks)    $1,371.23

| Type | Reg | OT | DT | Exempt |
|---|---|---|---|---|
| Regular | 156.50 | | | |
| Total | 156.50 | | | |

| Earnings Totals: | Taxable | Non Tax |
|---|---|---|
| | 1,682.38 | |

**-----Taxes-----**

| | |
|---|---|
| Federal | 120.27 |
| FICA | 104.31 |
| Medicare | 24.40 |
| MA | 62.17 |
| Total | 311.15 |

### Grand Totals:    Check Amounts:$ 1,371.23

**-----Hours-----**

| Type | Reg | OT | DT | Exempt |
|---|---|---|---|---|
| Regular | 156.50 | | | |
| Total | 156.50 | | | |

| Total Earnings: | Taxable | Non Tax |
|---|---|---|
| | 1,682.38 | |

**-----Taxes-----**

| | |
|---|---|
| Federal | 120.27 |
| FICA | 104.31 |
| Medicare | 24.40 |

DEF000013

**AlliedBarton Security Services**

*Employee #'s Listed: 145807 To 145807*
*Group By: Employee*

**Payroll Check History**

Check Dates: All Dates

04/15/05    12:14:27 PM    Page 2 of 2

Maximum Pay Security Level 9

| Emp # Check Date | Check # | Employee Name Check Amount | Check Status | 401 K Earnings | Check Frequency | Batch # | Batch Type |
|---|---|---|---|---|---|---|---|
| | | | | | MA | 62.17 | |
| | | | | | Total | 311.15 | |

DEF000014